UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:15-CR-076 JD |
| | ) | 3:17-CV-651 JD |
| VICTOR HUGO MARTINEZ-LOPEZ | ) | |

## **OPINION AND ORDER**

The indictment in this case charged Defendant Victor Martinez-Lopez ("Martinez-Lopez") with two counts of distributing a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and one count of conspiracy to possess and distribute methamphetamine, in violation of 21 U.S.C. § 846. [DE 9] Martinez-Lopez pled guilty with the benefit of a plea agreement to the two distribution counts. [DE 17-1] This Court accepted Martinez-Lopez's plea of guilty, accepted his plea agreement, and found him guilty on November 6, 2015. [DE 24] On August 31, 2016, the Court sentenced him to 294 months of imprisonment on each of the counts concurrently, to be followed by six years of supervised release. [DE 58]

Now proceeding *pro se*, Martinez-Lopez has filed a motion under 28 U.S.C. § 2255, attacking his sentence as well as the sufficiency of the indictment underlying his conviction. After instructing the government to respond and after reviewing the instant motion, the government's response, and Martinez-Lopez's reply, the Court will dismiss his claims and deny the issuance of a certificate of appealability.

## FACTUAL BACKGROUND

Martinez-Lopez was a member of an interstate methamphetamine distribution conspiracy. As part of his involvement, he would shuttle drugs from a supplier in Texas to Elkhart, Indiana. There, he would accept either cash or methamphetamine for his efforts. He did this approximately eight times between 2014 and 2015. Martinez-Lopez also organized other large shipments of drugs from Texas to Indiana, sold methamphetamine to numerous individuals throughout Indiana and Michigan, and directed others to do so, all as part of the larger conspiracy.

The government charged Martinez-Lopez with two counts of distributing methamphetamine and one count of conspiracy to possess and distribute methamphetamine. He plead guilty with the benefit of a plea agreement to the two distribution charges. At the change of plea hearing, the magistrate judge elicited sworn testimony from Martinez-Lopez confirming that he had consulted with his attorney regarding the plea agreement, its contents, and its consequences, that Martinez-Lopez understood those consequences, and that he entered into the plea agreement knowingly and voluntarily.

The case proceeded to sentencing, where the Court imposed a 294-month sentence on each of the distribution counts, to run concurrently. As part of its Guidelines calculation, the Court imposed a two-level enhancement for Martinez-Lopez's role as a leader or organizer in the conspiracy under U.S.S.G. § 3B1.1(c). Martinez-Lopez did not object to this enhancement, but he did successfully oppose a separate two-level enhancement for knowingly distributing unlawfully imported methamphetamine under § 2D1.1(b)(5). Just under a year after his sentencing, Martinez-Lopez filed the instant § 2255 motion.

**STANDARD OF REVIEW**

Section 2255(a) of Title 28 provides that a federal prisoner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [and] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (citation omitted). Further, "a Section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (citation omitted). Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)). A court may also deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

**DISCUSSION**

Martinez-Lopez's claims can be divided into two broad categories. His first set of substantive claims includes arguments that the indictment was deficient because it did not include either the *mens rea* associated with his offenses or the drug quantity amount, and that he should not have received an enhancement under Guidelines § 3B1.1(c) for his aggravating role in the offense. Martinez-Lopez's second set of claims all relate to the ineffective assistance of

counsel. The Court will first address Martinez-Lopez's substantive claims before moving on to his claims for ineffective assistance.

A. **Substantive Claims**

Independent from his ineffective assistance claims, Martinez-Lopez argues that the indictment should have, but did not contain allegations of *mens rea* and drug quantity [DE 64 at 5-6], and that the aggravating role enhancement he received at sentencing should not apply to him. [DE 64-1 at 5] But Martinez-Lopez has already waived these claims. His plea agreement contained the following language:

> I expressly waive my right to appeal or to contest my conviction and all components of my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground other than a claim of ineffective assistance of counsel, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceedings, including but not limited to, a proceeding under Title 28, United States Code, Section 2555.

[DE 17-1 ¶ 9(d)] In the Seventh Circuit, plea agreements that contain waivers of collateral review are generally enforceable. *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) ("[W]aivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver."); *see also United States v. Worthen*, 842 F.3d 552, 554 (7th Cir. 2016) ("Generally speaking, appeal waivers are enforceable and preclude appellate review.").

Martinez-Lopez stated under oath at his sentencing hearing that he understood that waiver [Sent. Tr. at 37:23-38:5], and the Court found his plea to be knowing and voluntary. Moreover, his substantive claims do not fall within any exceptions to the enforceability of waivers recognized by the Seventh Circuit. *See United States v. Smith*, 759 F.3d 702, 706 (7th

Cir. 2014).[1] Thus, the waiver here is enforceable, and Martinez-Lopez's substantive claims fall short.

1. *Contents of the Indictment*

Waiver notwithstanding, Martinez-Lopez's substantive claims regarding the indictment's sufficiency still fail. First, he cannot argue that the indictment "does not contain the *mens-rea* for a conviction under Title 21 841(a)(1) or 846" [DE 64 at 5], and therefore "does not properly allege an offense against the United States" because it does not set forth all the elements of the charged offenses. [DE 64-1 at 2] Indeed, Counts 1 and 2 of indictment (the Counts to which Martinez-Lopez plead) allege that Martinez-Lopez "knowingly and intentionally" distributed a mixture or substance containing methamphetamine. Therefore, the indictment sufficiently alleges the element of criminal intent. *See United States v. Johnson*, 127 F.3d 625, 628 (7th Cir. 1997) (The elements of an offense under 21 U.S.C. § 841(a)(1) include that the defendant "knowingly and intentionally" distributed a controlled substance.).

Second, Martinez-Lopez argues that the indictment lacks allegations as to the drug quantity in this case. Relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), he argues that drug quantity must be charged in the indictment and proven beyond a reasonable doubt. [DE 64-

---

[1] For example, Martinez-Lopez's substantive claims might overcome waiver if he contended that his counsel's ineffectiveness related specifically to his plea agreement's appeal waiver or its negotiation. *See Smith*, 759 F.3d at 706-707 (citing *Hurlow v. United States*, 726 F.3d 958, 964-66 (7th Cir. 2013) ("The sole type of ineffectiveness claim we have said that a defendant may not waive is an ineffectiveness claim having to do with the waiver (or the plea agreement as a whole) and its negotiation."). None of Martinez-Lopez's claims relate to the appeal waiver in his plea agreement. And while his reply brief appears to blame a lack of understanding as to the appeal waiver (and perhaps its inclusion in the plea agreement) on defense counsel's ineffectiveness, this argument was not included in the § 2255 motion itself. It is therefore not properly before the Court and will not be considered. *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."); *United States. v. Hughes*, 970 F.2d 227, 235 n. 6 (7th Cir. 1992) ("[A]rguments raised for the first time in a reply brief are waived."); *see also Adkins v. United States*, 2016 WL 2625362, *3 n. 2 (N.D. Ind. May 9, 2016) (declining to address issues in reply brief not contained in the § 2255 motion itself; *United States v. Joiner*, 847 F. Supp. 604 (N.D. Ill. 1994) (same).

1 at 4-5] "*Apprendi* holds that a sentence may not exceed a statutory maximum unless the circumstances that raise that cap are established, to the jury's satisfaction, beyond a reasonable doubt." *United States v. Demirjian*, 20 F. App'x 524, 527 (7th Cir. 2001). The maximum statutory sentence for distributing even the slightest amount of methamphetamine is 20 years (240 months). 21 U.S.C. § 841(b)(1)(C). Martinez-Lopez received a 294-month sentence, which is obviously longer than 20 years, but because he had a prior felony conviction for distributing cocaine, the government filed a sentencing enhancement notice in compliance with 21 U.S.C. § 851. This subjected Martinez-Lopez to an enhanced statutory maximum of 30 years (360 months). *See* § 841(b). Thus, because his sentence fell within the enhanced statutory maximum, his *Apprendi* claim fails. *United States v. Abdulahi*, 523 F.3d 757, 760 (7th Cir. 2008) ("As we have repeatedly explained, *Apprendi* has no application to cases like this one where the sentence is below the statutory maximum.").[2]

### 2. Aggravating Role Adjustment

Martinez-Lopez also argues that he should not have received a two-level enhancement under Guidelines § 3B1.1(c) for his role as a leader, organizer, manager, or supervisor. According to him, his role was limited to that of a driver. [DE 64-1 at 6] Regardless of his appeal waiver, Martinez-Lopez's argument fails at the outset because challenges to a prisoner's Guidelines sentencing range are not cognizable on § 2255 review. *See Hawkins v. United States*, 706 F.3d 820 (7th Cir. 2013) (holding that an error in calculating a defendant's guidelines

---

[2] The government's § 851 notice is the subject of one of Martinez-Lopez's ineffective assistance claims, discussed below. But even assuming *arguendo* that the enhanced penalty did not apply to him, Martinez-Lopez's *Apprendi* claim would still fail, even though 294 months exceeds the basic 20-year statutory maximum. He was convicted on two counts, and "[n]othing in *Apprendi* restricts the imposition of consecutive sentences." *Demirjian*, 20 F. App'x at 527. Thus, the maximum Martinez-Lopez could have received *without* the enhanced penalty is 40 years' imprisonment (two 20-year sentences, served consecutively). He received a little more than half of that "and therefore as a practical matter has nothing to gain" from this argument. *Id.*

sentencing range does not justify post-conviction relief where the defendant was sentenced under the post-*Booker* advisory guidelines regime). Section 2255(a) authorizes post-conviction alteration of a sentence that "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose …, or that … was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Here, Martinez-Lopez merely argues that the Court should not have applied an aggravating role enhancement to his offense level; that is not a Constitutional attack. Under *Booker*, the sentencing judge must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing] set forth in" section 3553(a). *Hawkins*, 706 F.3d at 823.

Even still, here, Martinez-Lopez qualified for an aggravating role enhancement. According to the relevant and unchallenged portions of the presentence report, he directed two couriers to transport methamphetamine on about a dozen separate occasions, organized shipments of methamphetamine from Texas and Georgia to Indiana, and organized the sale of two different methamphetamine shipments through his wife while incarcerated. [DE 33 ¶ 19] This conduct clearly earns him an aggravating role enhancement. *See* App. Note 2 ("To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants.").

For all these reasons, Martinez-Lopez's substantive claims regarding the indictment's sufficiency and the Guidelines enhancement will be dismissed.

**B.      Ineffective Assistance of Counsel**

Martinez-Jimenez additionally brings several claims by way of ineffective assistance of counsel. To prevail on a claim of ineffective assistance, a defendant must first show that his attorney performed deficiently—that the representation was incompetent and "fell below an

objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). Second, a defendant must show that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

   1. *Pretrial Investigation and Bill of Particulars*

Martinez-Lopez argues that "the outcome would be a lot different" had his initial attorney, Mark Doty, requested a bill of particulars or properly investigated his case. [DE 64-1 at 9] But these blanket assertions do not support a valid claim for ineffective assistance absent some sort of indication as to *what* information Mr. Doty would have uncovered by investigating the case and requesting a bill of particulars. Martinez-Lopez has not referenced any additional information here, and so he cannot demonstrate *how* Mr. Doty's alleged shortcomings impacted the outcome of this case. For that reason, Martinez-Lopez has failed to demonstrate the requisite prejudice under *Strickland*.

Moreover, the record belies Martinez-Lopez's assertion that his attorney failed to conduct any pretrial investigation. Mr. Doty received the government's discovery and independently reviewed it. [Doty Aff. ¶ 3] He also discussed the case with the federal prosecutor on multiple occasions, and the prosecutor provided him with information regarding drug quantity, estimated relevant conduct, and Martinez-Lopez's criminal history. *Id.* Mr. Doty reviewed all of this information with his client and explained to him that his relevant conduct and criminal history would result in him facing a statutory maximum sentence of 30 years. *Id.* ¶¶ 4, 6-9. Martinez-Lopez also described his criminal activity to Mr. Doty and detailed his involvement with illegal narcotics. *Id.* ¶ 5. He also told his attorney that he had admitted his conduct to law enforcement after his arrest. *Id.* Mr. Doty's actions here constituted sufficient investigation into Martinez-Lopez's case. *See Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006) ("When assessing

counsel's performance, we have noted that a reasonably competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty."); *see also United States v. Cieslowski*, 410 F.3d 353, 358-59 (7th Cir.2005), *cert. denied*, 546 U.S. 1097, 126 S. Ct. 1021, 163 L.Ed.2d 866 (2006) (to prove inadequate performance, a defendant must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence). For these reasons, Martinez-Lopez's ineffective assistance claim based on counsel's alleged failure to investigate will be dismissed.

    2. *Enhanced Statutory Maximum*

As discussed above, due to Martinez-Lopez's prior felony conviction for distributing cocaine, he was subject to an enhanced 30-year statutory maximum under 21 U.S.C. §§ 841(b) and 851. The government filed the required notice of this enhancement, but Martinez-Lopez now argues that he received ineffective assistance because his attorney never discussed the consequences of this notice, nor advised him of the higher statutory maximum sentence he would face.[3] [DE 64 at 6; 64-1 at 6-7]

Martinez-Lopez's claim fails because his attorney indeed explained to him, that, due to his relevant conduct and prior criminal convictions, he would be facing a higher statutory maximum sentence under §§ 841(b) and 851, and that the plea agreement reflected that enhancement. [Doty Aff. ¶¶ 8-9, 11-12] However, even if Mr. Doty had neglected to explain the enhanced statutory maximum, Martinez-Lopez's claim fails anyway because he does not even attempt to show that, absent Mr. Doty's alleged failure, he would have gone to trial rather than

---

[3] Martinez-Lopez also claims that "the [plea] agreement did not discuss the potential effect of the Section 851 filing," but that is false. [DE 64-1 at 6] Paragraph 9(c) of the plea agreement expressly states that the maximum penalties for Martinez-Lopez's violations included "a maximum of 30 years imprisonment" (as opposed to the normal 20-year maximum sentence).

9

accept the plea agreement. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). Nor is the Court convinced that Martinez-Lopez *could* show such prejudice. It defies logic to think that Martinez-Lopez would have turned down the plea agreement in order to face a combined 60-year maximum on Counts 1 and 2 at trial, when he was already willing to plead to Counts 1 and 2 believing that the statutory maximum was a combined 40 years. This claim will be dismissed.

   *3. Consequences of Plea Agreement*

  Third, Martinez-Lopez argues that Mr. Doty was "ineffective during the plea process" such that Martinez-Lopez did not understand the "consequences of his plea." [DE 64 at 4, 8] To establish the prejudice element for this claim, Martinez-Lopez would have to prove that (1) because of his attorney's ineffective assistance, he misunderstood the consequences of his plea agreement, and (2) he would not have pled guilty absent that misunderstanding. *See Thompson v. United States*, 732 F.3d 826 (7th Cir. 2013) (holding that the defendant could not establish prejudice where the record showed he properly understood the consequences of his plea); *Berkey v. United States*, 318 F.3d 768 (7th Cir. 2003) (rejecting an ineffective-assistance claim where, despite the defendant's arguments to the contrary, his statements at the change of plea hearing confirmed that he understood the sentencing process and his potential sentences, and that no promises were made to induce his plea).

  Here, the record indicates that Martinez-Lopez cannot satisfy his burden to show prejudice. In particular, he confirmed at the change of plea hearing that he had no difficulty communicating with Mr. Doty, that he had discussed the case in general and the plea agreement

10

in particular with Mr. Doty, and that he believed he had told Mr. Doty everything Mr. Doty needed to know in order to represent him. [Change of Plea Tr. at 7:23-25, 8:13-9:5] Martinez-Lopez stated that he understood that he could be sent to prison for up to 30 years on each count, for a total of 60 years on Counts 1 and 2. *Id.* at 16:11-17:2. He also acknowledged that he had discussed the Guidelines with Mr. Doty, that he read the plea agreement, discussed it with his attorney, understood it, and signed it. *Id.* at 19:6-16. On top of that, Martinez-Lopez stated in his plea agreement that he read and discussed Counts 1 and 2 with Mr. Doty, and that Mr. Doty had informed him regarding these charges and his defenses. [DE 17-1 ¶¶ 4-5] Martinez-Lopez understood that he faced a maximum prison term of 30 years for each count, waived his right to appeal on any ground other than ineffective assistance of counsel, and agreed that his relevant conduct included the distribution of 45 kilograms of methamphetamine. *Id.* ¶¶ 9(c)-(d), (h). He stated that he believed Mr. Doty had "done all that anyone could do to counsel and assist [him]" and that he understood "the proceedings in this case against [him]." *Id.* ¶ 11.

In sum, Martinez-Lopez's statements under oath at the change of plea hearing confirm that, notwithstanding any subpar advice he may have received from his attorney, he nonetheless understood the consequences of his plea agreement. Thus, he cannot show that he was prejudiced by any ineffective assistance, so his claim fails. *See Missouri v. Frye*, 566 U.S. 134, 142 (2012) ("Before a guilty plea is entered the defendant's understanding of the plea and its consequences can be established on the record. This affords the State substantial protection against later claims that the plea was the result of inadequate advice."); *Thompson*, 732 F.3d at 830 ("[The defendant] cannot show that [his attorney's] alleged failure to clarify the sentencing consequences of pleading guilty to conspiracy was a 'decisive factor' in his decision to forgo trial because the district court's explanation of the sentencing process at [the defendant's] plea

colloquy removed any possible prejudice of [the attorney's] advice."); *Berkey*, 318 F.3d at 773. Therefore, Martinez-Lopez's claim that he did not understand the consequences of his plea agreement will be dismissed.[4]

### 4. Failure to Object to Drug Quantity

Martinez-Lopez claims that he was not responsible for the 45 kilograms attributed to him in the presentence report, which "contained no supporting data explaining how it arrived at the 45-kilogram amount." [DE 64-1 at 5] He argues that he cannot be held personally accountable for distributing any amount above the 84 grams involved in two controlled buys because the indictment "lists no co-conspiracy, with no one else, or any evidence that Petitioner did distribute 45 kilograms of drugs." *Id.* Martinez-Lopez claims that he suffered from ineffective assistance of counsel because he "told his lawyer the drug amount was wrong and his attorney failed to object to it." [DE 64-1 at 4] For clarity's sake, two attorneys were substantively involved in representing Martinez-Lopez during the sentencing phase: Mr. Doty, who represented Martinez-Lopez through the finalization of the presentence report; and Philip Skodinski, who took over later and represented Martinez-Lopez through sentencing.[5]

---

[4] Martinez-Lopez slapped the allegation that he "lacked the capacity to plead guilty" because "it was impossible for him to apprehend the magnitude of his actions or the attendant consequences" to the end of his motion. [DE 64-1 at 12] To the extent this argument is a new, standalone argument that Martinez-Lopez lacked the mental capacity to understand the proceedings, the claim will be dismissed. Any such argument is undermined by Martinez-Lopez's sworn statements to the contrary made at the change of plea hearing, where the Court repeatedly inquired as to whether he understood the nature of the proceedings and he consistently answered in the affirmative. Those statements are presumed to be truthful. Furthermore, neither Martinez-Lopez nor his attorneys ever indicated that he was unable to understand the nature of the charges and the consequences of his plea. *See Gray v. United States*, No. 03 C 2942, 2004 WL 2921858, *4 (N.D. Ill. Dec. 13, 2004) (rejecting § 2255 petitioner's mental capacity claim based on his statements to the contrary made in open court at the change of plea hearing and where he did not previously call his competency into question) (citing *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000)).

[5] Attorneys H. Jay Stevens and Peter Boyles also briefly entered their appearances on behalf of Martinez-Lopez.

First of all, Martinez-Lopez's assertion that he was not charged with conspiracy is mistaken. Count 3 of the indictment charged him with knowingly conspiring with other persons to distribute methamphetamine and possessing methamphetamine with the intent to distribute. [DE 9 at 3] But Martinez-Lopez's argument is better characterized as pinned to his belief that he can only be held accountable at sentencing for the two distribution counts he plead guilty to and was convicted on. However, the Guidelines require the Court to consider as relevant conduct "all acts and omissions … that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Here, relevant conduct pertaining to Martinez-Lopez's conviction for distribution plainly encompasses the larger conspiracy of which the two convicted offenses were a part.

With that clarification, the presentence report provides significant detail as to why Martinez-Lopez is responsible for 45 kilograms of methamphetamine. He sold 84 grams of methamphetamine over the course of two controlled buys involving a confidential informant, he arranged two methamphetamine sales while in custody, totaling 241.7 grams, and he made approximately eight deliveries of methamphetamine from Texas to Elkhart, each trip involving 8 or 9 kilograms of product. [DE 33 ¶¶ 8-9, 11-13, 16] In total, Martinez-Lopez was thus responsible for at least 64.3257 kilograms of methamphetamine, far more than the 45 kilograms attributed to him. *Id.* ¶ 16. But because the Guidelines drug table at § 2D1.1(c)(1) only accounts for amounts of "45 KGs or more of Methamphetamine," he could only be held responsible under the Guidelines for, at most, 45 kilograms. *Id.*

Any objection by either Mr. Doty or Mr. Skodinski to the drug amount would have been futile. The presentence report correctly sets forth the amount of relevant methamphetamine and Martinez-Lopez agreed to the 45-kilogram amount as relevant conduct in his plea agreement.

[DE 17-1 ¶ 9(h)] Mr. Doty claims that Martinez-Lopez never asked him to object to the drug amount after explaining to Martinez-Lopez why he would be held accountable for 45 kilograms [Doty Aff. ¶¶ 7, 11-12, 15], and notes that any objection would have resulted in a three-level increase in Martinez-Lopez's Guidelines offense level because the government would have withdrawn its recommendation that he receive credit for acceptance of responsibility. *Id.* ¶ 15.[6] There was no objection to be made here; Mr. Doty and Mr. Skodinski therefore did not provide ineffective assistance by making the strategic decision to refrain from pointlessly objecting to the drug quantity. *See Strickland*, 466 U.S. at 689-91 (holding that a convicted defendant must show that the omissions of counsel giving rise to an ineffective assistance claim must not have been the result of reasonable professional judgment). This claim will be dismissed.

    5.   *Failure to Appeal*

Lastly, Martinez-Lopez claims that Mr. Skodinski failed to file a direct appeal of his sentence despite requests to do so. [DE 64 at 5; 64-1 at 5-6] It appears that any such appeal would have pertained to the drug quantity, which was covered by Martinez-Lopez's plea agreement. [Skodinski Aff. ¶ 3] Mr. Skodinski contests this; he maintains that Martinez-Lopez did not inform him that he wished to file an appeal until well after the deadline to do so had passed. [Skodinski Aff. ¶¶ 4-5] Regardless of who said what, as discussed above, Martinez-Lopez made a knowing and voluntary waiver of his appellate rights in his plea agreement. That valid waiver "knocks out [his] argument that his lawyer failed to follow his direction on appeal." *Nunez v. United States*, 546 F.3d 450, 453 (7th Cir. 2008). As the Seventh Circuit has stated, "a lawyer has a duty to the judiciary to avoid frivolous litigation – and an appeal in the teeth of a valid waiver is frivolous." *Id.* at 455. So, even assuming Martinez-Lopez told Mr. Skodinski to

---

[6] The government maintains it would have reacted the same way had Mr. Skodinski objected at the sentencing hearing itself. [DE 75 at 23]

file an appeal, Mr. Skodinksi did not provide ineffective assistance of counsel by not doing so when said appeal would have been dismissed in short order. *Id.* at 456 ("Once a defendant has waived his right to appeal not only in writing but also in open court under Rule 11(b)(1)(N), the sixth amendment does not require counsel to disregard the waiver."). In addition, had Mr. Skodinski proceeded with an appeal in the face of Martinez-Lopez's valid waiver, he would have put the benefits inherent in the plea agreement at risk. *See id.* at 455 (citing cases for the proposition that "when a defendant appeals despite agreeing not to do so, the prosecutor may withdraw concessions made as part of the bargain"). Here, an appeal would have allowed the prosecutor to reinstate the dismissed charge or to ask for an increase in sentence based on Martinez-Lopez's failure to continuously maintain his acceptance of responsibility. [Skodinski Aff. ¶ 3] With the valid appeal waiver in place, Mr. Skodinski's duty to protect Martinez-Lopez's interests militated against filing an appeal. *See Nunez*, 546 F.3d at 455.

Therefore, even if Martinez-Lopez timely asked Mr. Skodinski to file an appeal, Mr. Skodinski adhered to the requirement that "[u]nless a non-frivolous issue could be raised on appeal, counsel should protect the client's interest in retaining the benefit of the plea bargain." *Id.* This claim will be dismissed.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts. The substantial showing standard is met when "reasonable jurists could debate whether

(or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see Young v. United States*, 523 F.3d 717 (7th Cir. 2008). Here, for the reasons just discussed, the Court does not find that Martinez-Lopez has made a substantial showing of the denial of any constitutional rights, or that any issues in this motion are adequate to deserve encouragement to proceed further. The Court therefore denies the issuance of a certificate of appealability.

The Court advises Martinez-Lopez that pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, when the district judge denies a certificate of appealability, the applicant may request a circuit judge to issue the certificate. The Court further advises Martinez-Lopez that any notice of appeal of this judgment must be filed within 60 days after the judgment is entered. Fed. R. App. P. 4(a); *Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006) (stating that "the time to contest the erroneous denial of [the defendant's] first § 2255 motion was within 60 days of the decision").

## CONCLUSION

For those reasons, the Court **DENIES** Martinez-Lopez's motion for relief under § 2255 [DE 64], and **DENIES** the issuance of a certificate of appealability. Lastly, the Court **DENIES** Martinez-Lopez's request for an evidentiary hearing. [DE 64-1 at 5] The district court in which a prisoner files his § 2255 petition "is required to hold an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief ….'" *Sawyer v. United States*, 874 F.3d 276, 278 (7th Cir. 2017) (quoting 28 U.S.C. § 2255(b)).

As discussed above, Martinez-Lopez is entitled to no relief here, and therefore no evidentiary hearing need be held. The Clerk is hereby **DIRECTED** to enter judgment accordingly.

SO ORDERED.

ENTERED: May 2, 2018

               /s/ JON E. DEGUILIO
            Judge
            United States District Court